UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESLIE A. MOSKOWITZ,

  *Plaintiff*,

  v.

DANIEL P. DRISCOLL,

  *Defendant*.

Civil Action No. 23 - 2461 (LLA)

**MEMORANDUM OPINION**

Retired Lieutenant Colonel Leslie A. Moskowitz brings this action against Daniel P. Driscoll, the Secretary of the Army (the "Secretary"),[1] for violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, arising out of the denial of her request to correct her military records. ECF No. 1. Before the court are the parties' cross-motions for summary judgment, which are fully briefed. ECF Nos. 14, 15, 18, 20. For the following reasons, the court will grant Ms. Moskowitz's motion for summary judgment, deny the Secretary's motion for summary judgment, and remand the matter for further proceedings.

  I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

  A.  Army Retirement and Separation Policies

Beginning in 1994, the age of retirement for Army Reserve officers—set by federal statute—was sixty. 10 U.S.C. § 14509 (1994); *see* Administrative Record ("AR") 45. In 2006,

---

[1] Ms. Moskowitz named former Secretary of the Army Christine E. Wormuth as Defendant, but the current Secretary of the Army is "automatically substituted" under Federal Rule of Civil Procedure 25(d).

Congress increased the statutory age of retirement to sixty-two, 10 U.S.C. § 14509, but under Army regulations, with a few exceptions, the age of retirement remained sixty, *see* Army Reg. 140-10 ¶ 7-3. To retire from the Army with full retirement benefits, a servicemember must serve for twenty years. 10 U.S.C. § 12731(a)(2). Officers who have served for fewer than twenty years at the time they turn sixty are mandatorily separated and are not eligible for retirement benefits. *See id.* § 12731(f)(1). There is an exception, however, for servicemembers who have served for eighteen years at the time they turn sixty; specifically, a servicemember who is within two years of receiving retirement pay "may not be involuntarily released from that duty before [she] becomes eligible for that pay unless the release is approved by the Secretary." *Id.* § 12686(a); AR 21.

### B. Ms. Moskowitz's Enlistment and Separation

The facts are undisputed. ECF No. 14, at 1 n.1; ECF No. 15, at 5. In March 1998, Ms. Moskowitz joined the United States Army Reserve as a First Lieutenant at the age of forty-two. AR 59. Her area of concentration ("AOC") was as a dietitian and her occupation designation was "65C." AR 59.[2] Because she was past the age requirement for enlistment, Ms. Moskowitz was granted age- and age-in-grade waivers that allowed her to serve. AR 59. Based on the date of her sixtieth birthday, Ms. Moskowitz's Mandatory Removal Date ("MRD") was October 31, 2015. AR 438. This meant that she would have "completed 17 years, 7 months, and 22 days of active service" at the time of her removal, leaving her just over four months shy of the eighteen-year safe harbor to receive retirement benefits. AR 9, 17.

---

[2] As the parties note, "throughout the record, Plaintiff's occupation is variously referred to as a 'military occupational specialty,' or 'MOS,' and an 'area of concentration,' or 'AOC.'" ECF No. 14, at 1 n.2; ECF No. 15, at 5 n.2. The court will refer to the occupational specialty as "AOC" throughout to enhance clarity.

2

In October 2014, about a year before her MRD, Ms. Moskowitz emailed the Army's Human Resources Command ("HRC") to inquire about extending her MRD. AR 188. The HRC informed Ms. Moskowitz that the "strength numbers for 65C are currently over [their] max"—meaning that there was no demand for officers in 65C positions—"but we cannot tell you not to submit." AR 194. The HRC also told her that if she intended to seek an extension, she should "do so as soon as possible." AR 194.

In February 2015, Ms. Moskowitz submitted a request for an extension of her MRD. AR 437. In it, she explained that she was seeking the extension so that she could "complete 20 years of service for retirement" and have "the opportunity to continue to serve." AR 439. She included details on her educational and processional achievements and memoranda of support from the Director of the Graduate Program in Nutrition at the Army Medical Command and the Chief of the Dietitian Section of the Army Medical Specialist Corps. AR 439-43. In June 2015, the HRC denied her request. AR 444. The denial offered no explanation except that "retention of LTC Moskowitz is not in the best interest of the Army." AR 444.

Because her original AOC was overstrength, Ms. Moskowitz looked for positions that were understrength—meaning understaffed—to which she could transfer, so that she could again request an extension of her MRD. ECF No. 1 ¶ 32. She applied for a transfer to a position within the Civil Affairs branch of the Army, AOC 38G, which was understrength at the time. *Id.* ¶ 33; AR 445, 460. While her application was pending, Ms. Moskowitz sought reconsideration of her MRD extension request, explaining to the HRC that an extension of her MRD would allow her to "complete . . . critical mission projects and also obtain [her] 20 years of service." AR 162. In September 2015, the HRC denied her request for reconsideration. AR 169-74.

3

In October 2015, Ms. Moskowitz submitted a request to the Army Inspector General, seeking general statistics about how MRD extension requests are processed and specific details on her own extension request. AR 446. In the letter, she explained that she had applied for the 38G position and been told that her application "[was] very strong," but that she would not hear back about it until two weeks after her MRD date. AR 446.

The request was referred to the HRC Inspector General's Office, which responded to Ms. Moskowitz on October 26, 2015. AR 447-48. The Office did not provide her with the requested statistics, explaining only that "[e]ach request for extension is reviewed individually" and that "there [was] no system to identify and justify each denial." AR 447. It did explain how it had processed Ms. Moskowitz's MRD extension request, detailing that it had received her request on April 20, 2015, begun processing it on April 25, 2015, and rendered a final decision on June 23, 2015. AR 447. The Office concluded its response by stating: "Bottom line: Your request does not meet the criteria for MRD extension. Had your request to transfer to a shortage [AOC] been previously approved, there may have been a possibility for an MRD extension." AR 448.

On the same day that Ms. Moskowitz received the Office's response, she learned that she had been selected for a transfer to the understrength 38G position that she had applied for. AR 445. Despite her selection, Ms. Moskowitz was separated from the Army Reserves five days later, on October 31, 2015. AR 745.

### C.    Procedural History

In December 2015, Ms. Moskowitz filed a request with the Army Board for Correction of Military Records ("Corrections Board") asking it to grant her request for an MRD extension. AR 423-29. She explained that she was challenging her "unjust separation" because the denial of her initial MRD extension request had been based on her AOC "being overstrength," but she had

4

thereafter been accepted into the "[38G] program . . . which has extreme shortages . . . prior to [her] MRD removal date." AR 429. The Corrections Board denied Ms. Moskowitz's request in October 2017. AR 415-22.

In July 2018, Ms. Moskowitz submitted Freedom of Information Act ("FOIA") requests to the Army, seeking information about the number of servicemembers who were holding 65C positions at the time she submitted her MRD extension request and at the time the HRC denied it. *See* AR 273-92. In June 2020, Moskowitz received an email from the Army USAR Command Headquarters in response to her request, which provided data showing that in Fiscal Year 2015—the year that Ms. Moskowitz had been separated—there were sixty-four servicemembers with the 65C AOC, but by Fiscal Year 2017, there were 74 servicemembers with the 65C AOC. AR 276.

In June 2021, Ms. Moskowitz submitted a second request to the Corrections Board, asking that "her records be corrected to reflect that she was retained in the Army beyond her mandatory removal date, that she be reinstated in the Army and allowed to serve until the age of 68, that she be considered for promotion from Lieutenant Colonel to Colonel, and that she receive retroactive service credit to the date of her reinstatement." ECF No. 15, at 10; *see* ECF No. 14, at 5; AR 51. Along with her request, Ms. Moskowitz submitted much of the documentation that had accompanied her initial application, as well as additional information that she received through her FOIA requests. *See* AR 23-53.

Upon consideration of Ms. Moskowitz's application and the supporting documentation, the Corrections Board unanimously recommended granting partial relief. AR 18. Specifically, the Corrections Board recommended that all Army records related to Ms. Moskowitz "be corrected by showing [that] she completed 20 years of service qualifying for non-regular retired pay and was notified of her eligibility for retired pay based on 20 years of Reserve Component service," and

5

that Ms. Moskowitz "receive any retired pay she is due retroactive to the day after she would have completed 20 years of service." AR 18. The basis for the Corrections Board's decision was that, at the time of her separation, Ms. Moskowitz was "in close proximity to reaching 18 years of service, a point at which she would have been retained to complete 20 years of service," and it would be "unjust" to uphold her separation without retirement benefits "in consideration of her willingness and efforts to continue her service in an understaffed AOC." AR 17.

In June 2023, the Deputy Assistant Secretary of the Army overturned the Corrections Board's recommendation. AR 2. The Deputy Assistant Secretary's decision was one paragraph long and stated in relevant part:

> I have reviewed the evidence presented, findings, conclusions, and Board member recommendations. Based upon the board's finding that the area of concentration was unstaffed and the evidence in the record contradicting that findings [sic] in multiple locations, as well as the applicant's MRD extension request being denied based upon the [AOC] of the applicant being in an overstrength status at the time, I overturn the board's recommendation. The application submitted by the individual concerned is denied.

AR 2.

In August 2023, Ms. Moskowitz brought this action challenging the Deputy Assistant Secretary's decision to overturn the Corrections Board's decision under the APA. ECF No. 1. In December 2023, the case was reassigned to the undersigned. Dec. 15, 2023 Docket Entry. In March 2024, the Secretary moved for summary judgment. ECF No. 14. The following month, Ms. Moskowitz filed a cross-motion for summary judgment. ECF No. 16. The motions are fully briefed. ECF Nos. 14, 15, 18, 20.

## II.   LEGAL STANDARDS

"The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice."

6

10 U.S.C. § 1552(a)(1). "[S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of th[e relevant] military department"—here, the Corrections Board. *Id.* In some circumstances, the Corrections Board's decision is then reviewed by the Secretary of the Army, who "may direct such action as he or she deems proper on each case." 32 C.F.R. § 581.3(g)(3)(i); *see id.* § 581.3(g)(2)(ii) (listing the situations where the Corrections Board's decision is not final but is instead a recommendation on which the Secretary makes the final determination). Where "the Secretary does not accept the [Corrections Board's] recommendation, adopts a minority position, or fashions an action that he or she deems proper and supported by the record, that decision will be in writing and will include a brief statement of the grounds for denial or revision." *Id.* § 581.3(g)(3)(i).

"The Secretary's denial of an application for correction to a military board of records corrections is a final agency action reviewable under the [APA]." *Piersall v. Winter*, 507 F. Supp. 2d 23, 33 (D.D.C. 2007); *see* 5 U.S.C. § 706. Under the APA, the court may set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is "highly deferential" and "presumes the agency's action to be valid." *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981). In the context of decisions on military records, the standard is even more deferential "to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). Accordingly, the court asks only if the Secretary's "decisionmaking 'process was *deficient*, not whether [its] decision was *correct*,'" *McKinney v. Wormuth*, 5 F.4th 42, 46 (D.C. Cir. 2021) (alteration in original) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508,

7

1511 (D.C. Cir. 1989)), and it "will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting *Bowman Transp., Inc. v. Ark.-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974)). That said, this "broad discretion in administering the correction of military records does not obviate the APA's requirement that administrative actions be supported by reasoned decisionmaking." *Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020) (internal quotation marks omitted) (quoting *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014)).

### III. DISCUSSION

Ms. Moskowitz argues that the Deputy Assistant Secretary's written explanation for departing from the Corrections Board's recommendation was arbitrary and capricious in violation of the APA. ECF No. 15, at 5.[3] She further contends that the decision "failed to correct injustice clearly present in the record." *Id.* The Secretary responds that "the Deputy Assistant Secretary considered the relevant evidence and the recommendation of the [Corrections Board] and adequately explained his decision, which was neither arbitrary and capricious, nor an injustice." ECF No. 18, at 1. The court agrees with Ms. Moskowitz and will remand the case for further proceedings.

First, it appears that the Deputy Assistant Secretary either misunderstood the Corrections Board's findings or issued an internally inconsistent order. "[W]hen a mistake infects the agency's analysis or the outcome of the adjudication, it crosses the line [from harmless error] into arbitrary

---

[3] Ms. Moskowitz also argues that the Deputy Assistant Secretary's decision is not supported by substantial evidence, ECF No. 15, at 15-18, but the D.C. Circuit has held that the substantial-evidence standard applies to cases involving military records only "if the Board adjudicating the claim has been 'designated as a special board by the Secretary.'" *McKinney*, 5 F.4th at 46 n.1 (quoting 10 U.S.C. § 1558(b)(1)(A), (B)). The court will therefore apply only the arbitrary and capricious standard.

and capricious territory." *PAM Squared at Texarkana, LLC v. Azar*, 436 F. Supp. 3d 52, 59 (D.D.C. 2020).  The basis of the Corrections Board's decision was that it would be "unjust" to uphold Ms. Moskowitz's discharge (which left her without retirement benefits) given that she was "in close proximity to reaching 18 years of service, a point at which she would have been retained to complete 20 years of service," when she had shown "her willingness and efforts to continue her service in an understaffed AOC."  AR 17.  The Corrections Board was thus inclined to "correct her record to constructively show [that] she [had] completed 20 years of service qualifying for non-regular retired pay and was notified of her eligibility for retired pay based on 20 years of [service]."  AR 17.

In reaching this conclusion, the Corrections Board did not dispute that Ms. Moskowitz's AOC (65C) was "over strength."  AR 8.  In this way, the Corrections Board understood that the HRC's 2015 denial of her MRD extension request was correct on the merits, but it nevertheless determined action was warranted "to remove an injustice."  10 U.S.C. § 1552(a)(1) (directing that military records be corrected when "necessary to correct an error *or remove an injustice*" (emphasis added)).

In overruling the Corrections Board, the Deputy Assistant Secretary took a different tack.  He concluded that the Corrections Board had based its recommendation on a "finding that [Ms. Moskowitz's AOC] was un[der]staffed," which he believed was inconsistent with "the evidence in the record contradicting that findings [sic] in multiple locations, as well as the applicant's MRD extension being denied based upon [her AOC] being in an overstrength status at the time."  AR 2.

The parties offer competing readings of the Deputy Assistant Secretary's decision, trying to parse which AOC—65C or 38G—he was referring to in the above sentence.  ECF No. 15,

9

at 15-18; ECF No. 18, at 2-4.  The court agrees with the Secretary that the Deputy Assistant Secretary was referring to AOC 65C—the only AOC Ms. Moskowitz had been with throughout her military career.  ECF No. 18, at 3.  But that reading does not help the Secretary, because the Deputy Assistant Secretary misunderstood the Corrections Board to be concluding—in contradiction to the record evidence—that AOC 65C was "un[der]staffed," when it had in fact concluded that it was *overstaffed*—a conclusion supported by the record evidence.  *See, e.g.*, AR 8 ("A review of the applicant's service record shows . . . [that] AOC 65C was over strength . . . .").

The Secretary tries to write around the Deputy Assistant Secretary's glaring error, suggesting—without support—that it "appears to be the result of the Correction[s] Board's misperception about which occupation staffing levels were relevant to the decision as to whether [Ms. Moskowitz] should be retained in the Army."  ECF No. 14, at 9.  That might hold water if the Corrections Board had discussed staffing levels in its decision, but it did not.  *See id.* at 5 (admitting that "the Correction[s] Board made no findings regarding the number of dieticians serving at the time of [Ms. Moskowitz's] separation").  Thus, because the Deputy Assistant Secretary's decision was based on a "mistake [that] infect[ed] [his] analysis or the outcome of the adjudication," *PAM Squared at Texarkana, LLC*, 436 F. Supp. 3d at 59, it is arbitrary and capricious.

Second, and in any event, the Deputy Assistant Secretary failed to reckon with the Corrections Board's asserted basis for granting Ms. Moskowitz partial relief: that failing to do so would be "unjust" in light of how close she was to reaching an eighteen-year tenure—at which point the Army would have been required to retain her until she reached twenty years—and her efforts to find an understaffed AOC in which she could continue to serve the Army.  AR 17.  If the Deputy Assistant Secretary was reaching a different conclusion on the merits of that argument, he

was required to provide a "brief statement of the grounds" for that decision. 32 C.F.R. § 581.3(g)(3)(i). He did not. His failure to provide "a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA," requires remand. *Kreis*, 866 F.2d at 1514-15.

In reaching this conclusion, the court is cognizant of the significant discretion afforded to the Deputy Assistant Secretary in cases such as this one. Indeed, a district court is tasked with "determin[ing] only whether the Secretary's decisionmaking process was deficient, not whether his decision was correct." *Id.* at 1511. But where the Deputy Assistant Secretary fails to offer any explanation at all for his decision to overturn a finding of the Corrections Board, the court lacks the information it requires to evaluate his decision-making process. A decision so opaque cannot be understood as being anything other than arbitrary and capricious. Because the Deputy Assistant Secretary made no mention of the Corrections Board's finding of injustice—such that this court cannot even determine whether he considered the finding, let alone conclude that his decision to overrule it was the product of reasoned decision-making, *Stewart v. Stackley*, 251 F. Supp. 3d 138, 156-57 (D.D.C. 2017)—the court must ask him to try again.

## IV.   CONCLUSION

For the foregoing reasons, the court will grant Ms. Moskowitz's Motion for Summary Judgment, ECF No. 16, deny the Secretary's Motion for Summary Judgment, ECF No. 14, and remand the matter for further proceedings.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 25, 2025